## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

|  |  |
|---|---|
| QUICKVAULT, INC., | |
| Plaintiff, | |
| | Case No.: |
| v. | **JURY TRIAL DEMANDED** |
| MUSARUBRA US LLC, | |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

1.     QuickVault, Inc. ("QuickVault") hereby brings this action alleging that Defendant Musarubra US LLC d/b/a Trellix ("Trellix") infringes United States Patent Nos. 9,565,200 (the "'200 Patent"), 9,961,092 (the "'092 Patent"), 10,999,300 (the "'300 Patent"), 11,637,840 (the "'840 Patent"), 11,895,125 (the "'125 Patent"), and 12,363,134 (the "'134 Patent") (collectively, the "Asserted Patents") in violation of the patent laws of the United States of America, 35 U.S.C. § 1 et seq.

## INTRODUCTION

2.     Due to the ease of insurance and prescription drug fraud, patient health information is a valuable target for cyber criminals.  Healthcare providers that lose control of patient data violate HIPAA-OCR requirements and are subject

to fines.  QuickVault created its CloudVault® Health business unit in 2015 to address this serious issue, deploying patented technology to mitigate risks to healthcare providers when sharing patient records.

3.     Before CloudVault Health, healthcare providers addressed data security concerns by piecing together HIPAA secure vaults, encryption software installed on individual endpoint computers, and expensive perimeter security that collectively limited access to sensitive data.  These solutions did not focus on automatically discovering and protecting the data itself or tracking and predicting the behavior of individuals with access to that data.

4.     QuickVault's patented technology improves security by scanning endpoints within a network that, in coordination with a cloud-based server, automatically discover, classify, and track sensitive information as well as permit remote remediation of policy violations by, e.g., deleting or encrypting unauthorized documents on endpoints.  QuickVault's patented technology also enables healthcare providers to predict policy violations before they occur by tracking and analyzing user activity, allowing healthcare providers to optimize security by placing restrictions on high-risk individuals.

5.     The "Trellix Security Platform" is an "[i]ntegrated platform across endpoint, email, network, data, cloud, and security operations." (*The Platform CISOs Trust*, TRELLIX, https://www.trellix.com/.)

2



(*Id.*)  This "single, open, comprehensive AI-powered platform" includes a number of interconnected sub-products relating to, e.g., "Endpoint Security," "Threat Intelligence," "Data Security," "Email Security," "Network Security," "Cloud Security," and "Security Operations."  (*Products[:] The Trellix Security Platform*, Trellix, https://www.trellix.com/products/.)  These offerings, as well as each of Trellix's other offerings (collectively, the "Accused Products") collectively interoperate as an integrated system/platform and implement QuickVault's patented technologies without authorization.

6.    A central aspect of the Accused Products is the deployment of agent software on endpoints to detect, classify, and track data as well as to enable remote

administrators to monitor and remediate policy violations.  Remote administrators are alerted to policy violations and granted multiple remediation options.  At least these functions of the Accused Products practice one or more claims of the Asserted Patents.

7.      Trellix has made the Accused Products available to businesses and individuals throughout the United States, including in this District.

## THE PARTIES

8.      QuickVault is a corporation formed under the laws of Georgia with its principal office located at 1400 Marketplace Blvd. Ste 226, Cumming, GA, 30041.

9.      Trellix is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 6000 Headquarters Drive, Suite 600, Plano, TX 75024.

## JURISDICTION AND VENUE

10.      This is a civil action for patent infringement arising under the patent laws of the United States as set forth in 35 U.S.C. §§ 271, *et seq*.

11.      This Court has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

12.      This Court has personal jurisdiction over Trellix because Trellix is a resident of Texas.

13.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b) because Trellix has a regular and established place of business in this District and has committed acts of infringement within this District.

## THE ASSERTED PATENTS

14.     The '200 Patent, which is entitled "Method and System for Forensic Data Tracking," was duly and legally issued to inventors Steven V. Bacastow and Michael Royd Heuss and assignee QuickVault on February 7, 2017.  A true copy of the '200 Patent is attached hereto as **Exhibit A**.

15.     QuickVault is the owner of the entire right, title, and interest in and to the '200 Patent, which is presumed valid under 35 U.S.C. § 282.

16.     The '092 Patent, which is entitled "Method and System for Forensic Data Tracking," was duly and legally issued to inventors Steven V. Bacastow and Michael Royd Heuss and assignee QuickVault on May 1, 2018.  A true copy of the '092 Patent is attached hereto as **Exhibit B**.

17.     QuickVault is the owner of the entire right, title, and interest in and to the '092 Patent, which is presumed valid under 35 U.S.C. § 282.

18.     The '300 Patent, which is entitled "Method and System for Forensic Data Tracking," was duly and legally issued to inventors Steven V. Bacastow and

Michael Royd Heuss and assignee QuickVault on May 4, 2021.  A true copy of the '300 Patent is attached hereto as **Exhibit C**.

19.    QuickVault is the owner of the entire right, title, and interest in and to the '300 Patent, which is presumed valid under 35 U.S.C. § 282.

20.    The '840 Patent, which is entitled "Method and System for Forensic Data Tracking," was duly and legally issued to inventors Steven V. Bacastow and Michael Royd Heuss and assignee QuickVault on April 25, 2023.  A true copy of the '840 Patent is attached hereto as **Exhibit D**.

21.    QuickVault is the owner of the entire right, title, and interest in and to the '840 Patent, which is presumed valid under 35 U.S.C. § 282.

22.    The '125 Patent, which is entitled "Method and System for Forensic Data Tracking," was duly and legally issued to inventors Steven V. Bacastow and Michael Royd Heuss and assignee QuickVault on February 6, 2024.  A true copy of the '125 Patent is attached hereto as **Exhibit E**.

23.    QuickVault is the owner of the entire right, title, and interest in and to the '125 Patent, which is presumed valid under 35 U.S.C. § 282.

24.    The '134 Patent, which is entitled "Method and System for Forensic Data Tracking," was duly and legally issued to inventors Steven V. Bacastow and Michael Royd Heuss and assignee QuickVault on July 15, 2025.  A true copy of the '134 Patent is attached hereto as **Exhibit F**.

25.    QuickVault is the owner of the entire right, title, and interest in and to the '134 Patent, which is presumed valid under 35 U.S.C. § 282.

## COUNT I:  PATENT INFRINGEMENT OF THE '200 PATENT

26.    QuickVault incorporates by reference each of the above paragraphs as if fully restated herein.

27.    Trellix has directly infringed and continues to directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, one or more claims of the '200 Patent by making, using, selling, offering to sell, and/or importing the Accused Products within the United States.

28.    Not only does Trellix infringe by supplying and maintaining the Accused Products for its customers, on information and belief Trellix uses the Accused Products internally in an infringing manner.

29.    A detailed infringement analysis demonstrating how the Accused Products practice each and every limitation of claim 1 of the '200 Patent, either literally or under the doctrine of equivalents, is provided in **Exhibit G**.

30.    As a result of Trellix's direct infringement of the '200 Patent, QuickVault has suffered monetary damages and seeks recovery in an amount adequate to compensate it for Trellix's infringement.

## COUNT II:  INDIRECT INFRINGEMENT OF THE '200 PATENT

31.    QuickVault incorporates by reference each of the above paragraphs as if fully restated herein.

32.    Trellix actively induces infringement of the '200 Patent by its customers to whom it provides the Accused Products under 35 U.S.C. § 271(b). *See* **Exhibit G**.  By implementing the Accused Products within their networks, including *inter alia* by integrating endpoints into their networks and using the Accused Products to monitor and manage those endpoints, Trellix's customers put the invention into service, i.e., control the system as a whole and obtain benefit from it.  Indeed, by using the Accused Products, Trellix's customers benefit from each claimed component of the invention, for example because each claimed component contributes to augmenting network security, network management, and/or data visibility.

33.    Trellix has knowledge of the '200 Patent, of its infringement of the '200 Patent, and of its customers' infringement of the '200 Patent at least as of the service and filing of this Complaint.  **Exhibit G** provides actual notice to Trellix that its making, use, sale, offer for sale, and/or importation of the Accused Products, as well as its customers' use of the Accused Products, infringe the '200 Patent.

8

34.     Trellix's continued sale, testing, support, instruction, and promotion of the Accused Products to customers and prospective customers constitutes active encouragement and instruction to infringe the '200 Patent.  For example, Trellix's publication of its products listing and descriptions (*Products[:] The Trellix Security Platform*, TRELLIX, https://www.trellix.com/products/), resource library (*Resource Library*, TRELLIX, https://www.trellix.com/resource-library/), blogs (*Blogs*, TRELLIX, https://www.trellix.com/blogs/) and related webpages intentionally instructs and encourages customers to use the Accused Products in infringing manners.  *See* **Exhibit G**.

35.     Upon information and belief, Trellix has many end user customers who use the Accused Products in a manner that directly infringes the '200 Patent. As a result of Trellix's infringement and its customers' infringement of the '200 Patent, QuickVault has suffered monetary damages and seeks recovery in an amount adequate to compensate it for Trellix's infringement.

## COUNT III:  DIRECT INFRINGEMENT OF THE '092 PATENT

36.     QuickVault incorporates by reference each of the above paragraphs as if fully restated herein.

37.     Trellix has directly infringed and continues to directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, one or

more claims of the '092 Patent by making, using, selling, offering to sell, and/or importing the Accused Products within the United States.

38.     Not only does Trellix infringe by supplying and maintaining the Accused Products for its customers, on information and belief Trellix uses the Accused Products internally in an infringing manner.

39.     A detailed infringement analysis demonstrating how the Accused Products practice each and every limitation of claim 1 of the '092 Patent, either literally or under the doctrine of equivalents, is provided in **Exhibit H**.

40.     As a result of Trellix's direct infringement of the '092 Patent, QuickVault has suffered monetary damages and seeks recovery in an amount adequate to compensate it for Trellix's infringement.

**COUNT IV:  INDIRECT INFRINGEMENT OF THE '092 PATENT**

41.     QuickVault incorporates by reference each of the above paragraphs as if fully restated herein.

42.     Trellix actively induces infringement of the '092 Patent by its customers to whom it provides the Accused Products under 35 U.S.C. § 271(b). *See* **Exhibit H**.  By implementing the Accused Products within their networks, including *inter alia* by integrating endpoints into their networks and using the Accused Products to monitor and manage those endpoints, Trellix's customers put the invention into service, i.e., control the system as a whole and obtain benefit

from it.  Indeed, by using the Accused Products, Trellix's customers benefit from each claimed component of the invention, for example because each claimed component contributes to augmenting network security, network management, and/or data visibility.

43.    Trellix has knowledge of the '092 Patent, of its infringement of the '092 Patent, and of its customers' infringement of the '092 Patent at least as of the service and filing of this Complaint.  **Exhibit H** provides actual notice to Trellix that its making, use, sale, offer for sale, and/or importation of the Accused Products, as well as its customers' use of the Accused Products, infringe the '092 Patent.

44.    Trellix's continued sale, testing, support, instruction, and promotion of the Accused Products to customers and prospective customers constitute active encouragement and instruction to infringe the '092 Patent.  For example, Trellix's publication of its products listing and descriptions (*Products[:] The Trellix Security Platform*, TRELLIX, https://www.trellix.com/products/), resource library (*Resource Library*, TRELLIX, https://www.trellix.com/resource-library/), blogs (*Blogs*, TRELLIX, https://www.trellix.com/blogs/) and related webpages intentionally instructs and encourages customers to use the Accused Products in infringing manners.  *See* **Exhibit H**.

45.    Upon information and belief, Trellix has many end user customers who use the Accused Products in a manner that directly infringes the '092 Patent. As a result of Trellix's infringement and its customers' infringement of the '092 Patent, QuickVault has suffered monetary damages and seeks recovery in an amount adequate to compensate it for Trellix's infringement.

### COUNT V:  DIRECT INFRINGEMENT OF THE '300 PATENT

46.    QuickVault incorporates by reference each of the above paragraphs as if fully restated herein.

47.    Trellix has directly infringed and continues to directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, one or more claims of the '300 Patent by making, using, selling, offering to sell, and/or importing the Accused Products within the United States.

48.    Not only does Trellix infringe by supplying and maintaining the Accused Products for its customers, on information and belief Trellix uses the Accused Products internally in an infringing manner.

49.    A detailed infringement analysis demonstrating how the Accused Products practice each and every limitation of claim 1 of the '300 Patent, either literally or under the doctrine of equivalents, is provided in **Exhibit I**.

50.     As a result of Trellix's direct infringement of the '300 Patent, QuickVault has suffered monetary damages and seeks recovery in an amount adequate to compensate it for Trellix's infringement.

**COUNT VI:  INDIRECT INFRINGEMENT OF THE '300 PATENT**

51.     QuickVault incorporates by reference each of the above paragraphs as if fully restated herein.

52.     Trellix also actively induces infringement of the '300 Patent by its customers to whom it provides the Accused Products under 35 U.S.C. § 271(b). *See* **Exhibit I**.  By implementing the Accused Products within their networks, including *inter alia* by integrating endpoints into their networks and using the Accused Products to monitor and manage those endpoints, Trellix's customers put the invention into service, i.e., control the system as a whole and obtain benefit from it.  Indeed, by using the Accused Products, Trellix's customers benefit from each claimed component of the invention, for example because each claimed component contributes to augmenting network security, network management, and/or data visibility.

53.     Trellix has knowledge of the '300 Patent, of its infringement of the '300 Patent, and of its customers' infringement of the '300 Patent at least as of the service and filing of this Complaint.  **Exhibit I** provides actual notice to Trellix that its making, use, sale, offer for sale, and/or importation of the Accused

Products, as well as its customers' use of the Accused Products, infringe the '300 Patent.

54.    Trellix's continued sale, testing, support, instruction, and promotion of the Accused Products to customers and prospective customers constitute active encouragement and instruction to infringe the '300 Patent.  For example, Trellix's publication of its products listing and descriptions (*Products[:] The Trellix Security Platform*, TRELLIX, https://www.trellix.com/products/), resource library (*Resource Library*, TRELLIX, https://www.trellix.com/resource-library/), blogs (*Blogs*, TRELLIX, https://www.trellix.com/blogs/) and related webpages intentionally instructs and encourages customers to use the Accused Products in infringing manners.  *See* **Exhibit I**.

55.    Upon information and belief, Trellix has many end user customers who use the Accused Products in a manner that directly infringes the '300 Patent. As a result of Trellix's indirect infringement and its customers' direct infringement of the '300 Patent, QuickVault has suffered monetary damages and seeks recovery in an amount adequate to compensate it for Trellix's infringement.

**COUNT VII:  DIRECT INFRINGEMENT OF THE '840 PATENT**

56.    QuickVault incorporates by reference each of the above paragraphs as if fully restated herein.

57.     Trellix has directly infringed and continues to directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, one or more claims of the '840 Patent by making, using, selling, offering to sell, and/or importing the Accused Products within the United States.

58.     Not only does Trellix infringe by supplying and maintaining the Accused Products for its customers, on information and belief Trellix uses the Accused Products internally in an infringing manner.

59.     A detailed infringement analysis demonstrating how the Accused Products practice each and every limitation of claim 1 of the '840 Patent, either literally or under the doctrine of equivalents, is provided in **Exhibit J**.  With respect to the method claims of the '840 Patent, each of the claim steps are either performed directly by Trellix or are otherwise performed by Trellix's customers under Trellix's direction and control.  Specifically, Trellix conditions participation in an activity (e.g., the use of at least certain aspects of Trellix's platform) or receipt of a benefit (e.g., the improvement in security/management/visibility achieved by utilizing at least certain aspects of Trellix's platform) upon performance of a step or steps of a patented method (e.g., any step of the claimed method performed by a customer rather than by Trellix directly) and establishes the manner or timing of that performance (e.g., by writing and maintaining the

software that customers use to perform claim steps, and by providing instructional materials to customers on how to utilize the system effectively).

60.    As a result of Trellix's direct infringement of the '840 Patent, QuickVault has suffered monetary damages and seeks recovery in an amount adequate to compensate it for Trellix's infringement.

**COUNT VIII:  INDIRECT INFRINGEMENT OF THE '840 PATENT**

61.    QuickVault incorporates by reference each of the above paragraphs as if fully restated herein.

62.    Trellix's customers practice the claimed methods of the '840 Patent, such that Trellix actively induces infringement of the '840 Patent by its customers to whom it provides the Accused Products under 35 U.S.C. § 271(b).  *See* **Exhibit J**.  By implementing the Accused Products within their networks, including *inter alia* by integrating endpoints into their networks and using the Accused Products to monitor and manage those endpoints, Trellix's customers put the invention into service, i.e., control the system as a whole and obtain benefit from it.  Indeed, by using the Accused Products, Trellix's customers benefit from each claimed component of the invention, for example because each claimed component contributes to augmenting network security, network management, and/or data visibility.

63.     Trellix has knowledge of the '840 Patent, of its infringement of the '840 Patent, and of its customers' infringement of the '840 Patent at least as of the service and filing of this Complaint.  **Exhibit J** provides actual notice to Trellix that its making, use, sale, offer for sale, and/or importation of the Accused Products, as well as its customers' use of the Accused Products, infringe the '840 Patent.

64.     Trellix's continued sale, testing, support, instruction, and promotion of the Accused Products to customers and prospective customers constitute active encouragement and instruction to infringe the '840 Patent.  *See* **Exhibit J**.  For example, Trellix's publication of its products listing and descriptions (*Products[:] The Trellix Security Platform*, TRELLIX, https://www.trellix.com/products/), resource library (*Resource Library*, TRELLIX, https://www.trellix.com/resource-library/), blogs (*Blogs*, TRELLIX, https://www.trellix.com/blogs/) and related webpages intentionally instructs and encourages customers to use the Accused Products in infringing manners.  *See* **Exhibit J**.

65.     Upon information and belief, Trellix has many end user customers who use the Accused Products in a manner that directly infringes the '840 Patent. As a result of Trellix's infringement and its customers' infringement of the '840 Patent, QuickVault has suffered monetary damages and seeks recovery in an amount adequate to compensate it for Trellix's infringement.

## COUNT IX:  DIRECT INFRINGEMENT OF THE '125 PATENT

66.    QuickVault incorporates by reference each of the above paragraphs as if fully restated herein.

67.    Trellix has directly infringed and continues to directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, one or more claims of the '125 Patent by making, using, selling, offering to sell, and/or importing the Accused Products within the United States.

68.    Not only does Trellix infringe by supplying and maintaining the Accused Products for its customers, on information and belief Trellix uses the Accused Products internally in an infringing manner.

69.    A detailed infringement analysis demonstrating how the Accused Products practice each and every limitation of claim 1 of the '125 Patent, either literally or under the doctrine of equivalents, is provided in **Exhibit K**.  With respect to the method claims of the '125 Patent, each of the claim steps are either performed directly by Trellix or are otherwise performed by Trellix's customers under Trellix's direction and control.  Specifically, Trellix conditions participation in an activity (e.g., the use of at least certain aspects of Trellix's platform) or receipt of a benefit (e.g., the improvement in security/management/visibility achieved by utilizing at least certain aspects of Trellix's platform) upon performance of a step or steps of a patented method (e.g., any step of the claimed

18

method performed by a customer rather than by Trellix directly) and establishes the manner or timing of that performance (e.g., by writing and maintaining the software that customers use to perform claim steps, and by providing instructional materials to customers on how to utilize the system effectively).

70.    As a result of Trellix's direct infringement of the '125 Patent, QuickVault has suffered monetary damages and seeks recovery in an amount adequate to compensate it for Trellix's infringement.

**COUNT X:  INDIRECT INFRINGEMENT OF THE '125 PATENT**

71.    QuickVault incorporates by reference each of the above paragraphs as if fully restated herein.

72.    Trellix also actively induces infringement of the '125 Patent by its customers to whom it provides the Accused Products under 35 U.S.C. § 271(b). *See* **Exhibit K**.  By implementing the Accused Products within their networks, including *inter alia* by integrating endpoints into their networks and using the Accused Products to monitor and manage those endpoints, Trellix's customers put the invention into service, i.e., control the system as a whole and obtain benefit from it.  Indeed, by using the Accused Products, Trellix's customers benefit from each claimed component of the invention, for example because each claimed component contributes to augmenting network security, network management, and/or data visibility.

73.    Trellix has knowledge of the '125 Patent, of its infringement of the '125 Patent, and of its customers' infringement of the '125 Patent at least as of the service and filing of this Complaint.  **Exhibit K** provides notice to Trellix that its making, use, sale, offer for sale, and/or importation of the Accused Products, as well as its customers' use of the Accused Products, infringe the '125 Patent.

74.    Trellix's continued sale, testing, support, instruction, and promotion of the Accused Products to customers and prospective customers constitute active encouragement and instruction to infringe the '125 Patent.  For example, Trellix's publication of its products listing and descriptions (*Products[:] The Trellix Security Platform*, TRELLIX, https://www.trellix.com/products/), resource library (*Resource Library*, TRELLIX, https://www.trellix.com/resource-library/), blogs (*Blogs*, TRELLIX, https://www.trellix.com/blogs/) and related webpages intentionally instructs and encourages customers to use the Accused Products in infringing manners.  *See* **Exhibit K**.

75.    Upon information and belief, Trellix has many end user customers who use the Accused Products in a manner that directly infringes the '125 Patent. As a result of Trellix's indirect infringement and its customers' direct infringement of the '125 Patent, QuickVault has suffered monetary damages and seeks recovery in an amount adequate to compensate it for Trellix's infringement.

## COUNT XI:  DIRECT INFRINGEMENT OF THE '134 PATENT

76.    QuickVault incorporates by reference each of the above paragraphs as if fully restated herein.

77.    Trellix has directly infringed and continues to directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, one or more claims of the '134 Patent by making, using, selling, offering to sell, and/or importing the Accused Products within the United States.

78.    Not only does Trellix infringe by supplying and maintaining the Accused Products for its customers, on information and belief Trellix uses the Accused Products internally in an infringing manner.

79.    A detailed infringement analysis demonstrating how the Accused Products practice each and every limitation of claim 1 of the '134 Patent, either literally or under the doctrine of equivalents, is provided in **Exhibit L**.  With respect to the method claims of the '134 Patent, each of the claim steps are either performed directly by Trellix or are otherwise performed by Trellix's customers under Trellix's direction and control.  Specifically, Trellix conditions participation in an activity (e.g., the use of at least certain aspects of Trellix's platform) or receipt of a benefit (e.g., the improvement in security/management/visibility achieved by utilizing at least certain aspects of Trellix's platform) upon performance of a step or steps of a patented method (e.g., any step of the claimed

21

method performed by a customer rather than by Trellix directly) and establishes the manner or timing of that performance (e.g., by writing and maintaining the software that customers use to perform claim steps, and by providing instructional materials to customers on how to utilize the system effectively).

80.    As a result of Trellix's direct infringement of the '134 Patent, QuickVault has suffered monetary damages and seeks recovery in an amount adequate to compensate it for Trellix's infringement.

**COUNT XII:  INDIRECT INFRINGEMENT OF THE '134 PATENT**

81.    QuickVault incorporates by reference each of the above paragraphs as if fully restated herein.

82.    Trellix also actively induces infringement of the '134 Patent by its customers to whom it provides the Accused Products under 35 U.S.C. § 271(b). *See* **Exhibit L**.  By implementing the Accused Products within their networks, including *inter alia* by integrating endpoints into their networks and using the Accused Products to monitor and manage those endpoints, Trellix's customers put the invention into service, i.e., control the system as a whole and obtain benefit from it.  Indeed, by using the Accused Products, Trellix's customers benefit from each claimed component of the invention, for example because each claimed component contributes to augmenting network security, network management, and/or data visibility.

83.    Trellix has knowledge of the '134 Patent, of its infringement of the '134 Patent, and of its customers' infringement of the '134 Patent at least as of the service and filing of this Complaint.  **Exhibit L** provides notice to Trellix that its making, use, sale, offer for sale, and/or importation of the Accused Products, as well as its customers' use of the Accused Products, infringe the '134 Patent.

84.    Trellix's continued sale, testing, support, instruction, and promotion of the Accused Products to customers and prospective customers constitute active encouragement and instruction to infringe the '134 Patent.  For example, Trellix's publication of its products listing and descriptions (*Products[:] The Trellix Security Platform*, TRELLIX, https://www.trellix.com/products/), resource library (*Resource Library*, TRELLIX, https://www.trellix.com/resource-library/), blogs (*Blogs*, TRELLIX, https://www.trellix.com/blogs/) and related webpages intentionally instructs and encourages customers to use the Accused Products in infringing manners.  *See* **Exhibit L**.

85.    Upon information and belief, Trellix has many end user customers who use the Accused Products in a manner that directly infringes the '134 Patent. As a result of Trellix's indirect infringement and its customers' direct infringement of the '134 Patent, QuickVault has suffered monetary damages and seeks recovery in an amount adequate to compensate it for Trellix's infringement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff QuickVault respectfully requests the following relief:

A.    A judgment in favor of QuickVault that Trellix has infringed, either literally and/or under the doctrine of equivalents, each of the Asserted Patents;

B.    An award of damages resulting from Trellix's acts of infringement in accordance with 35 U.S.C. § 284;

C.    That this Court order an accounting of damages incurred by QuickVault from six years prior to the date this lawsuit was filed through the entry of a final, non-appealable judgment;

D.    That this Court award pre- and post-judgment interest on such damages to QuickVault;

E.    A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to QuickVault reasonable attorneys' fees against Trellix.

F.    Any and all other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

QuickVault respectfully requests a trial by jury on all issues triable thereby.

DATED this 10th day of November, 2025.

RESPECTFULLY SUBMITTED,

By:    */s/ Steven G. Hill*
       Steven G. Hill
       Georgia Bar No. 354658
       David K. Ludwig
       Georgia Bar No. 616971
       Hill, Kertscher & Wharton, LLP
       3625 Cumberland Blvd., SE
       Suite 1050
       Atlanta, Georgia 30339-6406
       Tel.: (770) 953-0995

       Email: sgh@hkw-law.com
       Email: dludwig@hkw-law.com

       *Counsel for Plaintiff QuickVault,
       Inc.*

25